UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER CZARPHINO PEETE,

    Plaintiff,

Case No. 13-CV-587

SGT. KLOTH, SGT. SCHROEDER,
LT. RENTERIA, CAPTAIN FLADHAMMER,
CAPTAIN SHARP, and SGT. KORAN,

    Defendants.

**DECISION AND ORDER**

The *pro se* plaintiff, Christopher Czarphino Peete, is a Wisconsin state prisoner. He filed this civil rights action pursuant to 42 U.S.C. § 1983. Peete claims that the defendants retaliated against him for filing grievances about staff members.[1] The defendants have filed a motion for summary judgment. The Court will grant the motion for the reasons explained herein.

**STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir.

---

[1] On April 28, 2014, the Court granted in part the defendants' motion for judgment on the pleadings, thereby dismissing the plaintiff's conspiracy and due process claims. (ECF No. 36.)

2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**FACTS**[2]

At all times relevant to this matter, Peete was an inmate at New Lisbon Correctional Institution (NLCI). (DPFOF ¶ 2; Compl., ECF 1, p. 1.) Defendants Diane Fladhammer and Thomas Sharp were NLCI captains. (DPFOF ¶¶ 6, 17-19.) Defendant Juan Renteria was an NLCI lieutenant. (DPFOF ¶ 12.) Defendants Karen Kloth, Matthew Koran, and Gerald Schroeder were NLCI sergeants. (DPFOF ¶¶ 4, 8, 15-16.) Peete's retaliation claims are based on the defendants' alleged actions surrounding four conduct reports issued to Peete.

---

[2] This section is taken from the defendants' Statement of the Case section of their summary judgment brief, which is taken from their Proposed Findings of Fact ("DPFOF"). Peete "accepts the statement as true." (ECF No. 55 at 1.) The facts are therefore undisputed for the purpose of summary judgment

2

### A. Conduct Report #2257574

On January 6, 2013, Sgt. Kloth saw Peete lying on the floor outside his cell during the 9:15 p.m. institution count. During count, the NLCI Inmate Handbook requires inmates to "stand still in front of their closed cell doors with their backs to the wall on the unit tiers in silence." (DPFOF ¶¶ 21-27.) Kloth called Peete's name and Peete crawled back into his cell. (*Id.*) After the count was completed, Peete quickly came out of his cell and headed over to the phones. (*Id.*) Kloth called his name twice. (*Id.*) Kloth then gave Peete a direct order to put the phone down and come to the officer's station. (*Id.*) In response to Kloth's inquiry as to why Peete was out of his cell during count, Peete told Kloth that he didn't care, they are always out during count, and went back to the phone. (*Id.*) On January 7, 2013, Sgt. Kloth wrote Peete conduct report #2257574 for disobeying orders, being in an unassigned area, violating institutional policies and procedures, and disruptive conduct in violation of Wisconsin Administrative Code §§ DOC 303.24(1), 302.511, 303.63, and 303.28.

On January 9, 2013, Peete filed Offender Complaint NLCI-2013-735, through the Inmate Complaint Review System – the prison's grievance system – alleging that Sgt. Kloth "has it in for him" and gave him "ugly cold mean stares." (DPFOF ¶ 136.) Inmate complaints are confidential as a matter of law. *See* Wis. Admin. Code § DOC 310.16(1); (DPFOF ¶ 76.) Unless the inmate waives confidentiality, the information is disclosed "only to the extent necessary to investigate the complaint, implement the remedy, or in response to litigation." *Id.* Institution Complaint Examiner (ICE), Brendan Ingenthron, found no information that would support staff misconduct or work rule violations on the part of staff and recommended dismissal with the modification that D-Unit Manager, Ms. James, and Security Director Fuchs be notified. The warden agreed with the recommendation and the complaint was dismissed. (*Id.*)

On January 17, 2013, Peete filed Offender Complaint NLCI-2013-1325, alleging Sgt. Kloth was biased in her discipline of the inmates. (DPFOF ¶ 137.) He alleged that she disciplined one group of inmates for coming out of their cells right away for the phone line, but did not discipline other inmates for the same infraction. Peete accused Kloth of harassing people. (*Id.*) On January 18, 2013, ICE Ingenthron rejected the complaint pursuant to DOC § 310.11(5)(e) because the issue raised did not personally affect Peete. He did not appeal the rejection. (*Id.*)

The full due process hearing on conduct report #2257574 occurred on January 23, 2013. At the hearing, Peete admitted he was out of his cell before count was finished. (DPFOF ¶ 35.) The adjustment committee, consisting of Capt. Fladhammer and Mary Reimer, found Peete guilty of disobeying orders, being in an unassigned area, and violating institutional policies and procedures. The committee found him not guilty of disruptive conduct. (*Id.*) Peete was sentenced to twenty days of room confinement. (DPFOF ¶ 36.) He appealed the decision to Deputy Warden Timothy Thomas, who affirmed the decision finding, "The hearing officer demonstrated objectivity and based findings on evidence and testimony." (DPFOF ¶ 39.)

On March 1, 2013, Peete filed Offender Complaint NLCI-2013-4135, alleging that Sgt. Kloth lied about conduct report #2257574, that he did not disobey orders, that it was unfair Officer Annen was not at the hearing, and that Capt. Fladhammer told him she thought he was guilty before the hearing. (DPFOF ¶ 140.) ICE Ingenthron rejected the complaint because it was outside the scope of the ICRS pursuant to DOC § 310.08(3) because it challenged the factual basis for the conduct report and mitigating factors. (*Id.*) The ICRS is used only for procedural challenges to disciplinary proceedings, not the merits. (*Id.*) Peete did not appeal the rejection. (*Id.*)

4

### B. Conduct Report #2257588

On February 2, 2013, Peete was still serving his twenty days room confinement sentence. (DPFOF ¶ 42.) During confinement, "inmates are not permitted to use the dayroom, phones, or courtyard." (DPFOF ¶43.) Sgt. Kloth saw Peete cleaning his room with the cleaning cart at his door side. (DPFOF ¶¶ 45-46.) Sgt. Kloth asked the other officers on duty if anyone had given Peete permission to go into the dayroom and retrieve the cleaning cart. (*Id.*) No permission had been given. (*Id.*) Sgt. Kloth directed Peete to come to the officer's desk two times on the overhead paging system, which Peete ignored. (*Id.*) Officer Annen went to Peete's cell and brought him down to the officer's desk. (*Id.*) Sgt. Kloth asked Peete who gave him permission to clean his cell and he responded that he did not know he needed permission. (DPFOF ¶ 46.) But the unit logbook showed that Peete had just asked permission to clean his cell on January 28, 2013. Peete knew he was required to get permission. (*Id.*)

Lt. Renteria placed Peete in temporary lock up (TLU) pending Sgt. Kloth's issuance of conduct report #2257588 for disobeying orders and violation of institution policies and procedures. (DPFOF ¶ 48); Wis. Admin. Code DOC §§ 303.24 & 303.63. On February 4, 2013, Security Director Fuchs released Peete from TLU, and conduct report #2257588 was summarily disposed of with Peete receiving ten days cell confinement. (*Id.*)

On February 11, 2013, Peete filed Offender Complaint NLCI-2013-2832. (DPFOF ¶ 138.) He alleged that, on February 1, 2013, Sgt. Kloth harassed him and threatened to put him in segregation because the last ticket she wrote him had not put him in there. (*Id.*) Peete was in the library and when he went to leave, Sgt. Kloth asked him who gave him permission to be in the library while he was still on cell confinement. (*Id.*) On February 11, 2013, ICE Ingenthron rejected the complaint because Peete did not raise a significant issue. (*Id.*)

5

On March 4, 2103, Peete filed Offender Complaint NCLI-2013-4274, alleging that on February 2, 2013, Sgt. Kloth was sent to harass him by "someone in the hierarchy," and lied about Peete violating his sanctions by leaving his cell to retrieve the cleaning cart and clean his cell without permission. (DPFOF ¶ 141; Dkt 12-4.) The complaint was rejected, pursuant to DOC 310.11(5)(g), because it had already been addressed through Peete's prior use of the ICRS. (*Id.* at 4.) The dismissal was affirmed on appeal by Deputy Warden Thomas. (Dkt. 12-4, p. 8.)

C.  **Conduct Report #2267570**

On February 6, 2013, Lt. Renteria placed Peete in TLU, pending an investigation for group resistance and petitions. (DPFOF ¶ 49.) On February 12, 2013, Capt. Sharp interviewed Peete regarding the investigation for group resistance and petitions as well as contraband possession, which are major offenses pursuant to DOC §§ 303.20(3) and 303.47(2)(a). (DPFOF ¶ 50.) Capt. Sharp showed Peete a handwritten note that had been found when his property was packed for TLU. (*Id.*) Peete confirmed that the note was his. (*Id.*) The contents of the document appeared to be written in code. (DPFOF ¶ 50.) Peete claimed it was Supreme Mathematics and that it is used in the Muslim religion. (DPFOF ¶¶ 52.) Upon further investigation, Capt. Sharp discovered that Supreme Mathematics is used by the "5 Percenters," a group identified as a security threat group by the DOC. (DPFOF ¶ 53.) Capt. Sharp is a certified Security Threat Groups Coordinator, meaning he is able to make decisions related to the identification and operations of the various security threat groups and individuals associated with those groups. (DPFOF ¶ 20.) On February 18, 2013, Capt. Sharp issued Peete conduct report #2267570 for the major offenses. (DPFOF ¶ 55.)

That same day, Peete filed Offender Complaint NLCI-2013-3323, alleging that he was beginning to feel he was in segregation to demoralize and inflict mental anguish and not for the investigation. (DPFOF ¶ 139.) On February 18, 2013, the ICE recommended dismissal of the

6

complaint because Peete had been in TLU for 12 days and DOC § 303.11(3) allows for inmates to remain in TLU for 21 days. (*Id.*) Deputy Warden Thomas agreed with the ICE's recommendation and dismissed the complaint on February 21, 2013. (*Id.*)

A full due process hearing on conduct report #2267570 was held on February 26, 2013. Peete appeared in person and with his advocate, Sgt. Koran. (DPFOF ¶¶ 61-66.) Capt. Sharp was unable to attend, but Capt. Sharp answered Peete's written questions, which were part of the record. (DPFOF ¶ 64.) The adjustment committee, consisting of Capt. Kannenberg and Ms. Washetas, considered the conduct report and the evidence presented at the hearing and concluded it was more likely than not that Peete violated DOC §§ 303.20(3) and 303.47(2), when he was found in possession of the handwritten note determined to be gang related. (DPFOF ¶ 67.) Peete was ordered to serve 90 days disciplinary separation. (*Id.*) Peete appealed the decision to Deputy Warden Thomas, who affirmed it on March 11, 2013. (DPFOF ¶¶ 68-69.)

On March 18, 2013, Peete filed Offender Complaint NLCI-2013-5289, alleging that he was only found guilty of conduct report #2267570 because Capt. Sharp said the Supreme Mathematics are gang related. (DPFOF ¶ 143.) ICE Ingenthron rejected the complaint because the ICRS may be used to challenge only the procedure used in the disciplinary process. (*Id.*) Peete appealed the decision to Deputy Warden Thomas, who affirmed the rejection on March 26, 2013. (*Id.*)

### D. Conduct Report #1678913

On March 11, 2013, Peete filed Offender Complaint NLCI-2013-4773, alleging that, on January 18, 2013, Sgt. Schroeder cursed him out and threatened him after Peete did not immediately report to get his mail. (DPFOF ¶ 72.) Peete claimed that Inmates Brown and Tucker had information about this complaint. (*Id.*)

7

Due to the allegations of staff misconduct, ICE Ingenthron met with Peete on March 12, 2012. They reviewed DAI Policy 310.00.01, "Inmate Complaints Regarding Staff Misconduct," as well as DOC § 303.271, "Lying about staff." (DPFOF ¶ 77.) ICE Ingenthron gave Peete the option to waive confidentiality under DOC § 310.16(5). Ingenthron told Peete that the investigation would be turned over to the security director, and Peete could be given a conduct report if he were found to be lying. (*Id.*) Peete chose to waive confidentiality and pursue the investigation under DAI Policy 310.00.01. (*Id.*) He then provided a statement of the events he claimed happened. (*Id.*)

The investigation of the incident was conducted outside the scope of the ICRS, pursuant to DAI Policy 310.00.01. The matter was referred to Security Director Fuchs, who delegated the investigation to Lt. Renteria. (*Id.*) Lt. Renteria spoke with Sgt. Schroeder, who did not recall the incident as described by Peete, but recalled an incident where Peete said to him, "On the streets you wouldn't talk to me like that I'd take respect," and to which Sgt. Schroeder replied, "It's easy to do when you have a gun in your hand." (DPFOF ¶ 88.) This comment made Peete angry and he walked away. (*Id.*)

Pursuant to Peete's request, Lt. Renteria spoke with inmate Tucker, who told Lt. Renteria that he did not even know Peete and had no idea what Renteria was talking about. He also stated that Sgt. Schroeder treats them with respect and like men. (DPFOF ¶¶ 84-87.)

Also pursuant to Peete's request, Lt. Renteria interviewed inmate Brown, who Peete claimed was a witness. (DPFOF ¶¶ 79-83.) When asked about Sgt. Schroeder, inmate Brown stated, "He's a good Sgt. He is laid back and will actually talk with us and try to help." (*Id.*) Brown stated he never witnessed Sgt. Schroeder being unprofessional or disrespectful. (*Id.*) He further stated that he had no knowledge of any issues between Sgt. Schroeder and Peete. (*Id.*)

8

Based on the information Lt. Renteria learned during his interviews, he concluded that Peete was lying about Sgt. Schroeder in violation of DOC § 303.271. (DPFOF ¶ 90.) On March 14, 2013, Peete was given a copy of conduct report #1678913 for lying about staff, a major offense under DOC § 303.76. (*Id.*) A full due process hearing was held on March 22, 2013, the adjustment committee consisted of Capt. Fladhammer and Ms. Silao. (DPFOF ¶¶ 95-96.) Peete requested attendance of Sgt. Schroeder, who was not able to attend because it was a scheduled day off for him. (DPFOF ¶ 99.) Sgt. Schroeder and Lt. Renteria provided responses to Peete's approved questions to them on the day of the hearing. (DPFOF ¶¶ 99-100.) The adjustment committee took into consideration the statement in the conduct report and the evidence presented at the hearing. The committee concluded that Peete was guilty of lying about staff. It reasoned:

> An inmate lying about staff affects the integrity and safety and security of the institution. It generally creates undue work for staff who try to authenticate what the accused has said, only to find that it is untrue. It erodes authority and the integrity of staff by indicating that they said or did something that they actually did not. It creates a risk to the safety and security of the institution through the lessening of staff credibility and makes them appear as though they cannot be trusted by inmates and other staff, alike.

(DPFOF ¶¶ 102-107.)

The adjustment committee sentenced Peete to 180 days of disciplinary separation based on Peete's overall record, his record of prior similar offenses, the risk of serious disruption in the housing unit, the risk of serious injury to another, his awareness of the violation at the time, his attitude regarding the offense, the fact that the actions were not coerced, and the risk to the security of the institution. (DPFOF ¶ 108.) On March 25, 2013, Peete appealed the decision to Deputy Warden Thomas, who affirmed the committee decision on April 23, 2013. (DPFOF ¶¶ 112-13.)

No other conduct reports were issued to Peete at NLCI. (DPFOF ¶¶ 121-22.)

### E. Peete's Later Complaints Regarding the Conduct Reports

On March 28, 2013, Peete filed Offender Complaint NLCI-2013-6015, alleging that ICE Ingenthron and NLCI staff conspired to get him in trouble with conduct report #1678913, for lying about staff. (ECF No. 12-8, p. 2.) The complaint was ultimately dismissed by the Office of the Secretary. (ECF No. 12-8, p. 11.)

On April 4, 2013, Peete filed Offender Complaint NLCI-2013-6525, alleging that on March 27 or 28, ICE Ingenthron went to his cell door and angrily told Peete he better be ready to give a statement about who he wrote his last complaint about. (DPFOF ¶ 145.) ICE Dougherty investigated the allegations and recommended dismissal of the complaint, which was ultimately affirmed by the Office of the Secretary. (*Id.*)

On April 17, 2013, Peete had a hearing before the program review committee, who determined that Peete would be transferred to a maximum institution for behavior adjustment with a recall date in one year. (DPFOF ¶ 146.)

On April 29, 2013, Peete filed Offender Complaint NLCI-2013-8305, accusing Sgt. Koran of telling Peete that Koran knew Sgt. Schroeder was lying and that Peete was telling the truth about what he reported, that giving Peete the answers to his hearing questions on the same day of the hearing was a procedure used to make the accused unprepared and hinder his defense at the hearing, and that the 180 days of disciplinary segregation was excessive and used to intimidate and deter Peete from complaining about staff in the future. (DPFOF ¶ 147.) Peete alleged this conversation took place on April 16, 2013. Peete specifically alleged:

> Sgt. Koran was in the hall lying to an inmate about full due-process. I corrected what he meant, he came to my door asking my problem. I told him of the hearings and his defective idle service, we argued, I drilled him so good he panicked and admitted that after he read the answers of Sgt. Schroeder 'saying he doesn't recall cursing me out,' Sgt. Koran said, liars say they 'don't recall' when they don't want too. We argued further and I mentioned how when my witness showed up to a hearing I beat the ticket. When I use questions and no witness, the questions come

unanswered the day of the hearing and I always lose, why so? He said, well you said the answer, you have last minute defense and lose. I said, you admitting it's deliberate? He said, he can't do that, but read between the lines. I asked how come I received a 180 same time as fighters? He said it happens when you go against staff. So people won't complain, I showed him that I was suing in both a notarized writ of certiorari and 1983 he said, you have a lawsuit just don't sue me. I said NLCI have offended a Ghangis Khan like the 48 laws of power. He said good book and departed.

(DPFOF ¶¶ 115-16, 147; Rose Dec., Ex. 1009, p. 094.)

ICE Ingenthron contacted Sgt. Koran who stated that he "absolutely did not say to Mr. Peete that Sgt. Schroeder was lying or that his penalty was too harsh." (*Id.*) Sgt. Koran stated that he told Peete that it is the committee's responsibility to determine whether the evidence presented makes it more likely than not that Peete was lying about staff and that he could appeal the decision if he disagreed with the outcome. (*Id.*) The complaint was rejected because it was outside of the scope of the ICRS pursuant to DOC §§ 310.08(3) & 310.11(3). (*Id.*) The reviewing authority concluded that the complaint was appropriately rejected in accordance with DOC § 310.11(5). (*Id.*)

On May 6, 2013, Peete filed Offender Complaint NLCI-2013-8760 again alleging the entire hearing on conduct report #1678913 was wrong, vindictive, and in retaliation for Peete writing up a staff member. (DPFOF ¶ 149.) He wanted the disposition nullified. (*Id.*; Rose Dec., Ex. 1009, p. 041.) ICE Ingenthron rejected the complaint on June 4, 2013 as outside the scope of the ICRS, and Peete did not appeal that decision. (*Id.*; Rose Dec., Ex. 1009, p. 037.)

On May 28, 2013, Peete was transferred to Waupun Correctional Institution (WCI).

## ANALYSIS

The defendants contend that they are entitled to summary judgment on Peete's retaliation claims because his lies about staff are not protected speech and because there is no evidence that complaints about staff were a motivating factor behind any of his disciplinary proceedings. They

11

also contend that Peete would have received the same disposition regardless of whether defendants had a retaliatory motive. Lastly, the defendants contend that they are entitled to qualified immunity. In response, Peete contends that summary judgment is not proper as to his claims against Lt. Renteria and Sgt. Kloth.

As an initial matter, Peete's response does not address his retaliation claims against Capt. Fladhammer, Capt. Sharp, Sgt. Koran, and Sgt. Schroeder. He thus abandoned the claims against those defendants. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 624 n.3 (7th Cir. 2001) (same); *Donelson v. City of Chicago*, 272 F. Supp. 2d 717, 726 (N.D. Ill. 2003) (treating plaintiff's harassment claim as abandoned where she merely contended that she was harassed, but provided no legal arguments in support of the claim and "ma[de] no serious efforts to respond to the [defendant's] argument against it" in her summary judgment opposition brief). *See also Blue v. Hartford Life & Acc. Ins Co.*, 698 F.3d 587, 597 (7th Cir. 2012); *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003). Therefore, the Court will grant the defendants' motion for summary judgment as to Capt. Fladhammer, Capt. Sharp, Sgt. Koran, and Sgt. Schroeder. The court turns to Peete's claims against Lt. Renteria and Sgt. Kloth.

### A. Conduct Report #1678913

The defendants contend that Lt. Renteria did not retaliate against Peete with conduct report #1678913 because the First Amendment does not protect lies and because Peete fails to provide evidence that complaints about staff were a motivating factor in the issuance of the conduct report. Peete contends that summary judgment is not proper as to Lt. Renteria because he has maintained his innocence from the lying about staff charges set forth in conduct report #1678913. According to Peete, Lt. Renteria had a vested interest in the outcome of conduct report #1678913 because he

issued the conduct report and conducted the investigation. Peete asserts that had the investigation been properly conducted, "no disposition" would have existed. (ECF No. 55 at 2.) He also states:

> Plaintiff believes this court is able to see that the Plaintiff was deemed as a cumulative and excessive complainant, and that is a reasonable assumption that comments, by the Defendants were made subsequent to his filings. As if to say if he'd stop complaining so much, he'd have less problems. So it is safe to say, yes, the dispositions would have been different, or not at all absent defendants have a retaliatory motive [sic].

(ECF No. 55 at 3.)

To establish a prima facie case of retaliation, an inmate must produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) (clarifying allocation of evidentiary burdens at summary judgment in light of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)); *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (same). If the inmate satisfies these elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *See Kidwell*, 679 F.3d at 965; *Greene*, 660 F.3d at 979.

Here, the undisputed facts reveal that Lt. Renteria conducted an investigation into Peete's allegations regarding staff misconduct against Sgt. Schroeder. Pursuant to Peete's request, Lt. Renteria interviewed inmates Brown and Tucker. Their statements did not support Peete's allegations.[3] Lt. Renteria also spoke with Sgt. Schroeder who did not recall the incident described by Peete. As a result of his investigation, Lt. Renteria concluded that Peete was lying about Sgt. Schroeder and issued him conduct report #1678913 for lying about staff.

---

[3] Peete challenges the veracity of inmates Brown and Tucker's statements to Lt. Renteria. However, even if the inmates lied to Lt. Renteria, it is undisputed that their statements to Lt. Renteria did not support Peete's allegations.

13

Peete also contends that Lt. Renteria had a vested interest in the outcome of the disciplinary hearing on the conduct report and that the hearing officer would be "inclined to reach a finding of guilt," because Renteria wrote it. (ECF No. at 2.) However, Lt. Renteria's alleged vested interest in his work-product is different from a retaliatory motive against Peete for a protected First Amendment activity. *See Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005).

Peete has failed to provide any admissible evidence to support a finding that Lt. Renteria issued him conduct report #1678913 in retaliation for First Amendment protected activity. Thus, Peete's claim against Lt. Renteria will be dismissed.

### B. Conduct Reports 2257574, 2257588, and 2267570

The defendants contend that Peete's offender complaints were not a substantial or motivating factor for Sgt. Kloth's issuance of the conduct reports. Peete contends that the defendants' evidence shows that Sgt. Kloth most likely harassed him.

As an initial matter, Peete has not offered evidence establishing that Sgt. Kloth knew that he had filed an offender complaint against her. In fact, before Sgt. Kloth issued the first conduct report to Peete, 2257574, Peete had not filed any complaints about her. (DPFOF ¶¶ 21, 136.) Before the second conduct report, 2257588, Peete filed two complaints about Sgt. Kloth, but both were rejected without any indication that Sgt. Kloth was notified about the complaints. (DPFOF ¶¶ 21, 41, 137.)

Moreover, the undisputed evidence shows that Sgt. Kloth issued Peete the conduct reports because he violated clearly established administrative rules. (DPFOF ¶¶ 22, 47.) At the disciplinary hearing on conduct report #2257574, Peete admitted he broke the rules in that he was outside of his cell during institution count. For conduct report #2257588, it is undisputed that Peete was on room confinement and therefore not permitted to leave his cell but that he had left his cell

14

to retrieve a cleaning cart. Finally, Peete does not dispute that he possessed documents written in code that prison officials determined were used by a group identified as a security threat by the Wisconsin Department of Corrections. Sgt. Kloth issued him conduct report #2267570 for possessing the documents.

In addition, Peete has not shown that Sgt. Kloth's alleged harassment was sufficient to deter a person of ordinary firmness from filing future offender complaints. It did not deter Peete's complaint filing activity. He filed thirty offender complaints between January 2013, when Sgt. Kloth allegedly began harassing him, and May 2013, when he was transferred to Waupun Correctional Institution. (Defs' Resp. to Pl's Decl. ¶ 9; Dkt. 47-2 at 6-10.)

Peete has failed to show that his First Amendment protected activity was a substantial or motivating factor for any of Sgt. Kloth's actions. *See Hasan*, 400 F.3d at 1005 (a retaliation claim only arises when such actions are motivated by the plaintiff engaging in activity protected by the First Amendment). Therefore, Peete's claims against Sgt. Kloth will be dismissed.

## ORDER

**THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 40) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated this   29th   day of April, 2015.

                                                                s/ William C. Griesbach
                                                                William C. Griesbach, Chief Judge
                                                                United States District Court